**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSABEL ROZANA MOREIRA VENTURA,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-04273-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.

## INTRODUCTION

On July 30, 2026, Petitioner Rosabel Rozana Moreira Ventura (A# 205-066-093) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"). (Dkt. 1.) Petitioner contends that she was ordered removed to Guatemala, but granted withholding of removal to Guatemala on September 17, 2018. (Id. at 2.) Petitioner states that she was released on an Order of Supervision ("OSUP") and granted employment authorization from the Department of Homeland Security ("DHS"). (Id.) Petitioner further states that she has complied with every request, demand, and

requirement imposed by immigration authorities, including attending her scheduled check-ins with Immigration and Customs Enforcement ("ICE"). (Id. at 2-3.) Petitioner contends that upon attending her scheduled ICE check-in on July 24, 2026, she was detained by ICE. (Id. at 3.) Petitioner states that she was presented with a Notice of Removal to Mexico and forced to sign for service of the notice by immigration officers. (Id. at 3-4.) Petitioner contends that she has not received any meaningful notice or opportunity to present a fear-based claim to challenge her removal to Mexico. (Id. at 4.) Accordingly, Petitioner seeks the opportunity to present a fear-based claim to challenge her removal to Mexico. (Id. at 5.)

On August 4, 2026, Respondents Fereti Semaia, Ernesto Santacruz, Jr., Todd Blanche, Markwayne Mullin, and David Venturella (collectively, "Respondents") filed a Notice of Intended Removal notifying Petitioner and the Court that ICE had scheduled Petitioner's removal to Mexico for August 8, 2026. (Dkt. 6 at 2; Dkt. 6-1.) On Augsut 5, 2026, Petitioner filed an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (the "*Ex Parte* Application"). (Dkt. 7.) The *Ex Parte* Application sought a temporary restraining order to prevent Petitioner's removal pending final resolution of the Petition. (Dkt. 7-1 at 9.)

On August 5, 2026, the Court issued a Temporary Restraining Order to Preserve the Court's Jurisdiction for the limited purposes of preserving the Court's jurisdiction to rule on the Petition. (Dkt. 9.) Specifically, the Court ordered that Petitioner shall not be removed from the United States or transferred outside of the jurisdiction absent further order of the Court. (Id. at 1-2.) The Court noted that the briefs on the merits were due soon and that the Court could promptly rule on the Petitioner and vacate the temporary restraining order. (Id. at 2.)

On August 7, 2026, Respondents filed an Answer to the Petition (the "Answer"). (Dkt. 11.) On August 10, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 12.) The parties have consented to proceed before the

undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 8.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on her prior OSUP.**

## II.

## FACTUAL BACKGROUND

Petitioner is a citizen and national of Guatemala. (Dkt. 1 at 16.) She fled her country after both she and her children had been physically and sexually abused by her ex-partner. (Id.) Fearing that her ex-partner would further abuse her children or potentially kill her or her children, she sought assistance at the San Ysidro port of entry on August 17, 2012. (Id.)

When Petitioner entered the United States, she was paroled into the United States pursuant to Immigration and Nationality Act ("INA") Section 212(d)(5) and placed in immigration court proceedings before the Los Angeles Immigration Court. (Id.) Petitioner was released on her own recognizance ("ORR") and remained ORR throughout the pendency of her court proceedings. (Id.)

On September 17, 2018, an immigration judge granted Petitioner withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), preventing her deportation to Guatemala because she had established that she was more likely than not to be persecuted in Guatemala if she were returned. (Id.) Petitioner was simultaneously denied asylum, and a final order of removal was entered against her. (Id.) The September 17, 2018 order of the immigration judge indicates that Petitioner waived appeal of the immigration judge's decision. (Id.)

On December 3, 2018, ICE exercised its discretion to place Petitioner on an OSUP. (Id. at 17.) Petitioner's OSUP imposed numerous requirements, including that Petitioner report in person on December 3, 2018 to the ICE office in Los Angeles. (Id.) Petitioner timely reported as directed and thereafter complied with all terms of her OSUP. (Id.) Petitioner has no criminal record in the United States

and has never been arrested or charged with any criminal offense throughout her time in the United States. (Id. at 18.) Since being placed on her OSUP, ICE has never requested that Petitioner take any specific action to obtain a travel document from any third country. (Id.)

On July 24, 2026, Petitioner reported to the Los Angeles ICE office as scheduled, to comply with the terms of her OSUP. (Id.) At her July 24, 2026 check-in, Petitioner was arrested and detained by ICE agents despite no material changes to her individual circumstances since being placed on an OSUP. (Id.) At the time of her arrest, Petitioner told the arresting officers that she had been granted withholding of removal and was working on filing an adjustment of status petition through her U.S. citizen husband. (Id.) Petitioner alleges on information and belief that she was arrested and detained on July 24, 2026, without consideration of her individual facts or circumstances or a meaningful opportunity to be heard, nor was she notified of the revocation of her OSUP. (Id.) After her arrest, Respondents transferred Petitioner to the Adelanto ICE Processing Cetner, where she currently remains detained. (Id.)

Respondents have provided the Declaration of Deportation Officer Miguel Russi who states that on or about July 24, 2026, Petitioner filed a Motion to Reopen Proceedings Sue Sponte; Motion for Stay of Removal with the Immigration Court. (Dkt. 11-1 at 2.) DHS filed an Opposition on August 3, 2026 and the Immigration Court has not yet ruled on the motion. (Id.) Also on July 24, 2026, Petitioner was served with a Notice of Revocation of Release of the OSUP. (Id.) The notice states that it is appropriate to enforce the removal order entered against Petitioner because ICE has the ability and means to effectuate Petitioner’s removal. (Dkt. 11-3 at 1.) However, the notice also states that Petitioner was ordered removed to Guatemala, but that Petitioner was granted withholding of removal to Guatemala and that Petitioner’s case is therefore under review for removal to a third country. (Id.) The notice contains two boxes stating that ICE has obtained a travel document for

Petitioner and that ICE is seeking a travel document, but neither box is checked. (Id.)

Petitioner was also served with a Notice of Removal to Mexico on July 24, 2026. (11-4 at 1.) Deportation Officer Russi declares that Petitioner has not expressed to immigration authorities a fear of being removed to Mexico. (Dkt. 11-1 at 2.) However, Officer Russi provides no explanation or evidence to support this assertion. (Id.) Instead, Officer Russi simply states that the statements in the declaration are based on his personal knowledge, consultation with other ICE personnel, and review of official documents. (Id. at 1.) Respondents say that Petitioner was provided with an informal interview, which is attached to the Answer as Exhibit C. (Dkt. 11 at 2.) However, Exhibit C is the Notice of Removal to Mexico which is a single page form that states only, "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to MEXICO." (Dkt. 11-4.) There is simply no evidence of an informal interview.

Petitioner has provided a declaration signed under penalty of perjury stating that she told immigration authorities that she feared being removed to any country, including Mexico. (Dkt. 12-1 at 1-2.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) is that her re-detention violates the INA and the Administrative Procedure Act ("APA"). (Dkt. 1 at 19-23.) Petitioner's second claim for relief (Count Two) is that her indefinite detention violates the INA, the Accardi doctrine, and the APA. (Id. at 23-25.) Petitioner's third claim for relief (Count Three) is that her re-detention and indefinite detention violate her substantive due process rights. (Id. at 25-26.) Petitioner's fourth claim for relief (Count Four) is that her re-detention and indefinite detention violate her procedural due process rights. (Id. at 27-29.) Petitioner's fifth claim for relief

(Count Five) is that her removal to a third country without notice or an opportunity to raise a fear-based claim violates the INA, the Convention Against Torture ("CAT"), the APA, and the Due Process Clause of the Fifth Amendment. (Id. at 29-31.)

Petitioner seeks release from custody, as well as a declaration that her remove to Mexico without notice and an opportunity to raise a fear-based claim violates federal law and the U.S. Constitution. (Id. at 31-32.) Petitioner also seeks an order preventing her re-detention absent notice and a pre-deprivation hearing. (Id. at 32.) Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id.)

## IV.
## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause

provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg,

521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner arrived in the United States back in 2012, was paroled into the United States, and was released on her own recognizance by immigration authorities.[1] (Dkt. 1 at 16.) It is further undisputed that in 2018, immigration authorities placed Petitioner on an OSUP, that Petitioner thereafter complied with all terms of her OSUP, and that Petitioner has no criminal record in the United States. (Id. at 17-18.) Thus, the Court concludes that once Petitioner was released from custody, she acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."

---

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

It is also undisputed that immigration authorities re-detained Petitioner on July 24, 2026, at her scheduled ICE check-in, without prior notice or a pre-deprivation hearing. (Dkt. 1 at 18.) Thus, the Court concludes that Petitioner's re-detention by ICE on July 24, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's prior release on her OSUP. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal.

Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Additionally, given the recent attempt to remove Petitioner to a third country without prior notice, the Court further concludes that Petitioner is entitled to written

notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal. See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)."). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019. Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the

removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025). Here, Petitioner has presented a sworn declaration that she told immigration authorities that she feared being removed to any country, including Mexico. (Dkt. 12-1 at 1-2.) In light of this declaration, Respondents must permit Petitioner to pursue withholding of removal to Mexico through reopened removal proceedings before an immigration judge. Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation of her due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner and remove her to a third country, versus forcing Petitioner again to suffer detention and file a habeas petition to secure her release, favor the imposition of a limited injunction against future re-detention without

notice and a pre-deprivation hearing, as well as basic due process requirements before removal to a third country.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA. (Dkt. 1 at 32.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Rosabel Rozana Moreira Ventura (A# 205-066-093) ("Petitioner") from custody on her prior Order of Supervision

[2] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

("OSUP") and return any confiscated property and documents upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1231 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall not attempt to remove Petitioner to any country other than Guatemala without first providing written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3). Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: August 17, 2026

Joel Richlin

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE